# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                                :    CHAPTER 7

    MICHAEL SCOTT CHANDLER, SR.          :

       DEBTOR.                          :    BANKRUPTCY NO. 10-16089-MDC

## MEMORANDUM OPINION

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

### INTRODUCTION

The Debtor's estranged wife, Dolores Chandler ("Movant" or "Mrs. Chandler") filed a Motion for Relief from the Automatic Stay (the "Motion") requesting relief from the automatic stay to (1) proceed with a state court contempt proceeding against the Debtor, Michael Scott Chandler (the "Debtor" or "Mr. Chandler"); (2) complete the sale of certain real property; and (3) pursue all rights and claims she may have against the Debtor in equitable distribution and support in a divorce proceeding now pending in the Chester County Court of Common Pleas captioned *Dolores R. Chandler v. Michael S. Chandler*, Civil Action No. 04-06895 (the "Divorce Proceeding"). Mrs. Chandler contends that she is entitled to relief from the stay because the Debtor's bankruptcy filing was made in "bad faith," and the Debtor consented to and is subject to a Court Order in the Divorce Proceeding providing for the sale of the property at issue.

For the reasons discussed below, the Court will grant Mrs. Chandler's request for relief from stay to pursue all rights and claims that she may have in equitable distribution and support in the Divorce Proceeding. However, the Court will deny her requests with regard to the sale of the real property and to the state court contempt proceeding against the Debtor.

### PROCEDURAL HISTORY

The Debtor commenced a Chapter 7 bankruptcy case on July 23, 2010. Michael H. Kaliner was appointed Chapter 7 trustee (the "Trustee"). Mrs. Chandler filed the Motion approximately two weeks

later on August 5, 2010.  The Trustee filed a response opposing the Motion on August 20, 2010 [Docket No. 27] (the "Trustee's Response").  Thereafter, Debtor filed an opposition to the Motion on August 23, 2010 [Docket No. 34] (the "Response").[1]  On that same day, the Debtor converted his bankruptcy case to Chapter 11.[2]

On September 24, 2010, this Court held a hearing to address the matters raised by the Motion (the "Hearing").  Appearing at the Hearing were the Debtor, representatives of the Movant and Trilogy Investments, LLC ("Trilogy")[3], and the court-appointed conservator.  In support of the Motion, the Movant, offered the testimony of her divorce attorney Dolores Troiani and submitted several documents into evidence including a copy of an Order dated March 23, 2009 issued by the Chester County Court of Common Pleas in the Divorce Proceeding, a copy of a transcript of the hearing dated March 13, 2009, and a copy of an Order dated May 12, 2010 issued by the Chester County Court of Common Pleas in the Divorce Proceeding.  The Debtor testified in opposition to the Motion.  In addition, Maria D. Feeney, the Debtor's attorney in the Divorce Proceedings, testified regarding the circumstances involving the marketing of the Property and the formation of the agreement between the parties and Trilogy.

At the conclusion of the Hearing, this Court requested that the Debtor and Movant submit post-trial memoranda to address two issues: (1) whether this Court lacks jurisdiction to stay the sale of the Property as authorized by the Order of Court dated March 23, 2009 and the Order of Court dated May 13, 2010 issued by the Chester County Court of Common Pleas in the Divorce Proceeding ("State Court

---

[1] In the Debtor's Response, the Debtor embedded a motion for sanctions.  However, because the embedded motion was not properly noticed as required by L.R.B.P. 9014-3(c), this Court advised the Debtor at the Hearing that it would not consider the motion.

[2] Since conversion of this case to chapter 11, the Trustee has ceased his participation in this case.

[3] On November 12, 2010, almost two months after the conclusion of the Hearing, Trilogy filed a document styled "Joinder of Trilogy Investments, LLC to Motion of Dolores Chandler for Relief From the Automatic Stay Pursuant to Bankruptcy Code Section 362" [Docket No. 73] (the "Joinder Motion").  In the Joinder Motion, Trilogy claims to join the Movant's Motion.  Despite being in attendance at the Hearing, Trilogy's representatives made no request to present arguments or evidence to this Court.  Because the Debtor has not been afforded the opportunity to address the merits of Trilogy's late-filed Joinder Motion, this Court will not consider it or the exhibits it seeks to rely upon as evidence.  *See, e.g., Mannarino v. Morgan Tp*., 64 Fed. Appx. 844, 847 (3d Cir. 2003) (affirming district court decision refusing to consider argument because "plaintiffs did not have a meaningful opportunity to address its merits at trial"); *Sample v. Diecks*, 885 F.2d 1099, 1106 (3d Cir. 1989) ("It is well established that a trial judge possesses the discretion to prohibit parties from raising matters they have failed to advance during the pretrial proceedings.").

Orders"); and (2) the scope of the Debtor's interest in the Property as affected by the Divorce Proceedings.

Pursuant to this Court's Order, the Movant was to file her post-trial memorandum on or before October 8, 2010, and the Debtor was to file his memorandum on or before October 18, 2010. The Movant managed to comply with this schedule. However, Debtor was a day late in filing his memorandum. After the Movant filed a motion to strike the Debtor's late-filed memorandum, Debtor's counsel submitted a response explaining that the failure to meet this Court's deadline was the result of an administrative error caused by his office's internal case management software.[4]

In addition to the document filed October 19, 2010, the Debtor filed an Amended Reply Memorandum and a Second Amended Reply Memorandum [Docket Nos. 64 & 70]. Because Debtor did not seek leave from this Court to make his supplementary filings, this Court will not consider them. *See, e.g., In re Jungkurth*, 74 B.R. 323, 325-26 (Bankr. E.D. Pa. 1987) (informing counsel that unsolicited reply briefs will not be accepted or considered).[5]

## FACTUAL BACKGROUND

The Debtor and the Movant are husband and wife who are currently in the midst of what appears to be an extremely acrimonious divorce. As of this date, no divorce decree has been issued. The Debtor does not contest that the property at issue which consists of 35.9 acres of real property located at 438 McFarlan Road in Kennett Township and identified as Tax Parcel ID Nos. 62-4-129.1., 129.3, 130, 131 and 132 (the "Property") is marital property. Presently, the Property has two uses: a mushroom farm and a farmhouse. Parcels nos. 62-4-130, 131 and 132 of the Property comprise a total of 8.9 acres and are being used for the purpose of mushroom farming (the "Mushroom Farm"). The Mushroom Farm is titled

---

[4] The Movant did not notice its Motion to Strike consistent with L.R.B.P. 9014-3(c). As a result, no hearing has been scheduled on this matter. The Movant has identified no prejudice that she suffered as a consequence of the Debtor's late-filed memorandum. Therefore, this Court finds that late filing constitutes excusable neglect and will permit it. *See. e.g., Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993).

[5] This Court notes that by consenting to the post-hearing briefing schedule, the parties are deemed to have consented to a tolling of the 60-day period provided by § 362(e)(2). *See In re Aulicino*, 400 B.R. 175, 180 (Bankr. E.D. Pa. 2008) (holding that by agreeing to briefing schedule, parties are deemed to have consented to tolling of operation of § 362(e)(2)).

to "Michael Chandler Mushrooms" in fee simple.  Both the Movant and the Debtor concede that, despite

the Mushroom Farm's title, the title is effectively held by the Debtor.  Parcel nos. 64-4-129.1 and 129.3 of

the Property comprise a total of 26.9 acres and contain a farmhouse and wetlands (the "Farmhouse

Property").  The Farmhouse Property is titled to the Debtor and the Movant as tenants by the entireties.

Since the parties separated in 2004, the Debtor has maintained sole and exclusive possession of the

Property.[6]

　　　The Property, inclusive of both the Mushroom Farm and the Farmhouse Property, is encumbered

by a mortgage in the amount of $75,000.00 held by National Penn Bank (the "National Penn Mortgage").

In addition, the parties owe approximately $82,824.00 in back taxes, consisting of a Chester County tax

claim in the amount of $58,687.00 and a Kennett Consolidated School District tax claim in the amount of

$24,137.00 (the "Back Taxes"), arising from ownership of the Property.  As a result of the Back Taxes,

the Property was scheduled for a Sheriff sale on September 12, 2010 (the "Sheriff Sale").  The Sheriff

Sale has been stayed by this bankruptcy proceeding.

　　　At the Hearing, the Debtor testified that he has no education past high school and has been

engaged in the mushroom business for more than 40 years.  The Debtor relies on the Mushroom Farm as

the primary source of his income.[7]  The Debtor further testified that if the Mushroom Farm is sold he

would be without a means to support himself or fund any obligations he may have to the Movant as a

result of the Divorce Proceedings.  The Debtor estimated that rental of the mushroom houses located on

the Mushroom Farm generate approximately $120,000.00 per year.  In addition to this sum, he generates

another $25,000.00 from performing cleaning and filling services relating to the mushroom houses.[8]  The

---

[6] In addition to the Property, the Debtor is the owner of a property located at 661 Rosedale Road, Kennett Square,
Pennsylvania and identified as tax parcel number 62-4-118.1 (the "Residence").  The Debtor claims that the
Residence is worth $345,000.00.  Despite this valuation, the Residence is encumbered by a mortgage held by a first
mortgage in the amount of $459,951.00 held by CitiMortgage and a second mortgage in the amount of $25,000.00
held by CitiBank.  The Motion addresses neither the Residence nor the mortgages associated with it.
[7] He claims that he also receives $800.00 per month from his children.
[8] In addition to the evidence presented at the Hearing, this Court has taken judicial notice of the Debtor's schedules
and statement of financial affairs.  *See, e.g., In re Jabara*, 395 B.R. 330, 334 n.3 (Bankr. E.D. Pa. 2008); *In re
Romano*, 378 B.R. 454, 458 n.2 (Bankr. E.D. Pa. 2007) (observing that a court may take judicial notice of
bankruptcy petition and schedules).  The Court notes that the Debtor's testimony with regard to the amount of
income generated by the Property appears to be at odds with the amounts disclosed by the Debtor's schedule.  In his

Debtor's estimation of the Property's income producing capacity was corroborated by the testimony of Movant's counsel in the Divorce Proceedings. Movant's counsel testified that in her estimation Debtor's income exceeds $100,000.00 per year.

The primary thrust of the Motion deals with the efforts by the parties to sell the Property. From the record, it appears that the parties had entered into an agreement of sale to transfer the Property. The parties did not provide specific information with regard to the nature of this original agreement. However, that sale was not consummated. After this initial sale agreement failed, the parties received a letter of intent dated November 18, 2008 from George P. Beer to purchase the Property for the sum of $2,000,000.00 with settlement to occur within six months (the "Beer Offer").

The record is less than clear as to why the Beer Offer was not accepted. The Movant avers that she desired to accept the offer. When it appeared that the Debtor would not accept the Beer Offer, the Movant apparently petitioned the Chester Country Court of Common Pleas to prevent the dissipation of the asset (the "Dissipation Petition"). In response to the Movant's petition, the Debtor argued that rather than causing the dissipation of the asset, his refusal to accept the offer stemmed from his belief that the offer was "substantially less than the fair market value." Response, ¶ 8. Further clouding the status of the Beer Offer, the parties are presently joint defendants in an action captioned *4McFarlan Road Associates, LLC, Delaware Valley Development Group, LLC, George P. Beer and Delaware Valley Development Group, LLC v. Michael S. Chandler, Sr. and Dolores Chandler*, Case No. 08-14166, now pending in the Chester County Court of Common Pleas.[9] The parties have not disclosed the current status of this litigation or how it relates, if at all, to the Beer Offer.

A hearing on the Dissipation Petition was scheduled for March 23, 2009. Rather than proceed with the hearing, the parties appear to have negotiated a settlement in which they agreed to the

---

schedule I, the Debtor disclosed that he earns $8,778.50 per month from operation of the Mushroom Farm. The amount of the Debtor's income is further muddled by the disclosures contained in his statement of financial affairs that discloses that during the years 2009, 2008 and 2007 he has earned $32,080.00, $65,141.00 and $46,491.00 respectively. Whatever the amount, it is clear to this Court that the Property is the only source of the Debtor's income.

[9] The Debtor disclosed the existence of the lawsuit in his Statement of Financial Affairs.

appointment of a conservator who would have the authority to convey the property.  The parties'

agreement was disclosed to the Chester County Court of Common Pleas and memorialized in an order

dated March 23, 2009 (the "Conservator Order").  The Debtor contends that the Conservator Order is not

binding on him because his then-attorney lacked the authority to agree to such an arrangement.  He

further avers that upon learning of the effect of the Conservator Order, the Debtor terminated his counsel

for malfeasance.

Pursuant to Conservator Order, the Chester County Court of Common Pleas appointed Wendy W.

McLean as conservator of the Property (the "Conservator").  In relevant part, the Conservator Order

reads:

> "The Conservator shall have the authority to exercise general powers to
> effectuate sale of the property, including but not limited to: the ability to enter upon the
> property and permit others to do so; the execution and delivery of all documents, deeds,
> agreements, instruments, certificates and affidavits in connection with or in respect to the
> said sale and further to convey the property and all interest they may have therein, in the
> name, place and stead of the parties… By way of example and not limitation, the
> Conservator shall have the following powers: to negotiate the sale of the property; to
> engage a realtor to sell the property; to engage a appraise to advise as to its value; to
> engage other professionals/consultants, including but not limited to engineers, land
> planners, environmental firms, to direct from the proceeds of the sales the payment of all
> costs and fees, including attorney's fees and further to settle and/or discontinue any
> litigation involving the land…"

Movant's Exh. 1.

At some point, the Conservator identified Trilogy as a potential buyer of the Property.  In

response to the Conservator's plan to sell the Property to Trilogy, the Debtor filed a petition in the

Divorce Proceedings seeking to stay the sale of the Property to allow the Debtor time to obtain financing

to buy out the Movant's interest in the Property.  After holding an evidentiary hearing addressing the

Debtor's petition, the Chester County Court of Common Pleas denied the Debtor relief.  By an order

dated May 12, 2010 (the "Sale Order"), the Chester County Court of Common Pleas granted the

Conservator "express authority to enter into an agreement of sale with Trilogy Investments (or its

nominee) for the sale of the real estate."  Movant's Exh. 4.

In accordance with the Sale Order, the Conservator entered into an Agreement of Sale with

Trilogy dated May 12, 2010 (the "Sale Agreement").  To block the consummation of the Sale Agreement,

the Debtor sought appeal of the Sale Order.  The Superior Court of Pennsylvania quashed the appeal on

grounds that the Sale Order was an interlocutory order and that no determination of equitable distribution

had been made.  In addition to appealing the Sale Order, the Debtor has admitted to resorting to various

self-help measures that included, *inter alia*, interfering with Trilogy's attempts to survey the Property in

accordance with the Sale Agreement by reporting to the police that Trilogy's representatives were

trespassing on the Property.

> To stop the Debtor from resorting to self-help measures, the Movant filed a petition dated June 9,

2010 in the Divorce Proceedings requesting that the Chester County Court of Common Pleas hold the

Debtor in contempt for violation of the Sale Order (the "Contempt Petition").  In response, the Chester

County Court of Common Pleas scheduled a hearing to be held on July 30, 2010.  The hearing on the

Contempt Petition was stayed by the filing of the Debtor's bankruptcy petition.

> The Debtor admitted that he filed for bankruptcy protection in order to prevent the sale to Trilogy

and thereby preserve the Property because it is his principal source of income.  He believes the proposed

sale would leave him with insufficient assets to fund the claims of his creditors, including those owed to

the Movant.  He proposes in the alternative to conduct a sale in connection with this bankruptcy case with

the goal of obtaining a price closer to his estimation of the Property's true value.

DISCUSSION

*I.*        ***The Court's Jurisdiction***

> At the close of the Hearing, this Court specifically requested that the parties address its

jurisdiction in light of the State Court's orders authorizing the sale of the Property to Trilogy.  *See, e.g., In*

*re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 222 (Bankr.

D. Del. 1995) ("A bankruptcy court as a court of equity has the inherent power to dismiss a case when its

jurisdiction has been improperly invoked.") *citing SEC v. United States Realty & Improvement Co*., 310

U.S. 434, 435 (1941).  The parties filed the post-trial memorandum, but failed to adequately address, if at

all, whether this Court lacked jurisdiction as a result of the *Rooker-Feldman* doctrine.

7

As recently addressed by the Third Circuit, the *Rooker-Feldman* doctrine bars the losing party in a previous state court action from seeking "appellate review of the state-court judgment, a task entrusted by statute solely to the Supreme Court." *Great Western Mining & Mineral Co., Inc. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010). Under the test enunciated in *Great Western*, a federal court lacks jurisdiction if (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co., Inc. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). Here, the Debtor appears to be engaging in precisely the type of conduct prohibited pursuant to this doctrine. However, a closer look dispels this notion.

Courts have recognized an exception to the *Rooker-Feldman* doctrine where a bankruptcy court's jurisdiction is necessary to protect a debtor's rights that arise under the Bankruptcy Code. *See In re Sasson*, 424 F.3d 864, 871 (9th Cir. 2005) (stating "[t]he Rooker-Feldman doctrine has little or no application to bankruptcy proceedings that invoke the substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case."); *In re Funches*, 381 B.R. 471 (Bankr. E.D. Pa. 2008) (same); *In re Pina*, 363 B.R. 314, 321 (Bankr. D. Mass. 2007) (finding that by virtue of trustee's rights pursuant to §§ 363(h) and 544(a), non-debtor was not entitled to enforcement of state court orders against debtor); *Cohen v. Ehmke (In re Ehmke)*, Civ. No. 06-0598, 2006 WL 1994904 (E.D.N.Y. Jul. 14, 2006) (holding that pursuant to § 365(a), a debtor may reject a court-sanctioned contract without offending the *Rooker-Feldman* doctrine).

This exception is consistent with this Court's mandatory abstention obligations under 28 U.S.C. § 1334(c)(2). Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).  For mandatory abstention to apply, a proceeding must not implicate a debtor's

rights that arise under the Bankruptcy Code.  In other words, mandatory abstention is not appropriate in

core proceedings.

Although a debtor's interests in property is generally determined by state law, the Code provides

a debtor certain rights that if exercised have the power to augment a debtor's interests.  The Debtor has

indicated that he filed bankruptcy with the intent to conduct what amounts to a § 363(h) sale.  *See* 11

U.S.C. § 1107(a) (giving the debtor-in-possession all the rights and duties of a trustee); *see also In re*

*Brown*, 951 F.2d 564, 571, n.1 (3d Cir. 1991) (recognizing "that the Code provides the means for sale of a

tenant by the entireties' interest without the joinder of a non-debtor spouse").  Such rights arise under the

Code and are not available to the Debtor in the Divorce Proceedings.  Pursuant to § 363(h), a debtor-in-

possession has the right to sell the estate's interest together with the interest of a co-owner provided the

benefit to the estate exceeds the detriment to the non-debtor co-owner.  *See Schlossberg v. Barney*, 380

F.3d 174, 182 (4th Cir. 2004) ("11 U.S.C. § 363(h) ... permits a trustee to sell entireties property for the

benefit of joint creditors of the debtor and her spouse").  As such, they constitute core proceedings.  *See,*

*e.g., In re Stewart*, 325 Fed. Appx. 82, 83, n.1 (3d Cir. 2009) (recognizing that exercise of § 363(h) rights

constitute core proceedings).  Because the Divorce Proceedings does not have jurisdiction to resolve this

issue, this Court finds that its jurisdiction is not preempted by the Conservator Order or the Sale Order.

For this reason, this Court has jurisdiction and may consider the matters raised by this Motion and the

Debtor's bankruptcy case.

## II.    *Scope of the Automatic Stay*

### A.    Property of the Debtor's Estate

As indicated at the Hearing, this Court must as an initial matter determine whether any of the

actions undertaken in the Divorce Proceedings had the effect of divesting the Debtor of his interest in the

Property so as to remove it from the scope of the automatic stay.  The filing of a bankruptcy petition

creates an estate consisting of "all legal or equitable interests of the debtor in property as of the

commencement of the case."  *See* 11 U.S.C. § 541.  As of the commencement of this proceeding, the

Debtor held title to the Farmhouse Property as a tenant by the entirety with the Movant. *See In re Davis*, 356 B.R. 385, 387 (Bankr. W.D. Pa. 2006) (recognizing that until issuance of a divorce decree, debtor and non-debtor spouse continue to hold property by the entireties). Because the Debtor's interest in the Farmhouse Property has not been adjudicated pursuant to equitable distribution or the issuance of a divorce decree, this Court finds that as of the commencement of this case some portion of the Farmhouse Property was indubitably property of the estate. *See Napotnik v. Equibank and Parkdale Sav. Ass'n*, 679 F.2d 316, 318 (3d Cir. 1982) (including entireties property within the scope of § 541); *In re Wilson*, 85 B.R. 722, 724 (Bankr. E.D. Pa. 1988) (recognizing property held by the entireties is property of the estate within the scope of § 541); *In re Johnson*, 51 B.R. 439, 442-43 (Bankr. E.D. Pa. 1985) (same). With regard to the Mushroom Farm, this Court finds that based on the parties' concession that the Debtor holds title to this property in his name, his estate necessarily holds an interest in this property.

> **B.      The Trilogy Sale Agreement**

The existence of the Sale Agreement does not change this analysis. By operation of the "strong-arm powers" provided by 11 U.S.C. § 544(a)(3), a trustee or debtor-in-possession has the rights of a bona fide purchaser of real property (a "BFP") that is perfected as of the commencement of a bankruptcy case. In the capacity as a BFP, a debtor-in-possession may avoid unrecorded interests incurred by the Debtor. Neither the Movant or the Debtor contend that any action has been taken to record the transfer of the Property to Trilogy pursuant to Pennsylvania's recording statute, 21 P.S. § 402, or the *lis pendens* statute, 42 Pa.C.S. § 4302. Significantly, the Conservator Order did not divest the Debtor of possession of the Property. *See, e.g., In re Stewart*, 325 Fed. Appx. 82, 85 (3d Cir. 2009) (recognizing that § 544(a)(3) rights are not available where vendee is in possession of property subject to agreement of sale). As a result, a BFP cannot be said to have constructive notice of the proposed conveyance. *See, e.g., McCannon v. Marston*, 679 F.2d 13, 15 (3d Cir. 1982) (holding that a trustee's § 544(a)(3) strong-arm powers are not sufficient to avoid a real estate sale agreement where debtor retains legal title and purchaser is in possession of the property); *In re Ebel*, 144 B.R. 510, 515-16 (D. Colo. 1992) (relying on possession by receiver as grounds to charge trustee with constructive notice thereby defeating its claim to

status as a BFP).  Accordingly, pursuant to § 544(a)(3), the Debtor's interest in the Property would be superior to Trilogy's present interest.

For these reasons, this Court finds that the Debtor's interest in the Property is sufficient to render it an asset of his bankruptcy estate protected by the automatic stay and divest the Divorce Proceeding of jurisdiction over its disposition.  *See, e.g., In re Wilson*, 85 B.R. 722, 725 (Bankr. E.D. Pa. 1988) (acknowledging "the primacy of bankruptcy courts in controlling marital property when one spouse has filed for bankruptcy").

### III.    *The Debtor's Case Is Not A "Bad Faith Filing"*

Movant has requested relief from the automatic stay pursuant to 11 U.S .C. § 362(d)(1).  Section 362(d)(1) enables a bankruptcy court to grant a creditor relief from the automatic stay "for cause."  The Bankruptcy Code does not define cause.  Whether cause exists is determined on a case-by-case basis based on the totality of the circumstances.  *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (lifting automatic stay pursuant to § 362(d)(1) to permit appeal of state court judgment where combination of issue preclusion and the *Rooker-Feldman* doctrine would deny movant of a forum to litigate her cause).  The determination is by its very nature an equitable determination that requires this Court to engage in a fact-sensitive inquiry as to whether the balance of hardships favors the Movant.  *See, e.g., FRG, Inc. v. Manley*, 919 F.2d 850, 854 (3d Cir. 1990); *In re American Classic Voyages, Co*. 298 B.R. 222, 225 (D. Del. 2003) ("To establish cause, the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips significantly in its favor.") (internal quotations omitted).

The Movant contends that cause exists for relief from the automatic stay due to the Debtor's filing of his bankruptcy petition in bad faith.  The mere fact that the Debtor filed for bankruptcy relief during the pendency of the Divorce Proceeding is insufficient to support an inference of bad faith.  *See In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007).  To support an inference of bad faith, this Court must in addition find that the Debtor otherwise lacks a reorganizational purpose.  *See, e.g., In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (stating that a court's inquiry should be directed to the debtor's overarching

motive in filing for bankruptcy); *In re Dami*, 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994).

The Movant argues that Debtor did not file his bankruptcy for a legitimate bankruptcy purpose, but solely for the purpose of frustrating the sale to Trilogy as authorized by both the Conservator Order and the Sale Order. Admittedly, the Debtor stated in his testimony that he filed to prevent the sale. However, his resort to this forum cannot be dismissed as a mere litigation tactic. He contemplated that if the sale was completed, he would be rendered insolvent. Neither party disputes this proposition. This motive constitutes a legitimate bankruptcy purpose. This finding is buttressed by the fact that the purpose of the Debtor's filing appears to be that he perceived bankruptcy as the only means available to him to preserve his ability to repay his debts. "It is quite common and not inappropriate for a debtor to use chapter 11 to obtain a respite from a creditor or creditors aggressively seeking to collect on a debt, even when execution is imminent, provided that financial rehabilitation is possible." *In re McStay*, 82 B.R. 763, 768 (Bankr. E.D. Pa. 1988) (addressing bad faith in the context of a chapter 11 motion to dismiss). For this reason, this Court finds that the Debtor did not file without a reorganizational purpose.

The Movant also argues that the Debtor's filing was made in bad faith because the bankruptcy proceeding is fundamentally a two-party dispute between divorcing spouses. This Court recognizes that this proceeding does have many of the indicia of a two-party dispute that would give rise to an inference of bad faith. However, the impending Sheriff Sale negates this inference. The Debtor was caught between the proverbial rock and a hard place. On the one hand, he was faced with the sale to Trilogy that would have effectively rendered him insolvent. On the other, he was faced with the impending Sheriff Sale that would have had the same effect. The purpose of bankruptcy is to provide debtors a breathing spell during which they are permitted to marshal assets and otherwise get their financial affairs in order. *See, e.g., In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 100 (3d Cir. 2008). By seeking bankruptcy protection, the Debtor achieved for himself precisely this result. On this basis, this Court cannot infer bad faith.

Finally, the Movant argues that bad faith may be inferred from the fact that the Debtor holds bare legal title to the Property and therefore he has no chance of reorganization. This argument fails for two

reasons.  One, the Debtor holds more than bare legal title to the Property.  He is the title owner of the

Mushroom Farm and a tenant by the entireties of the Farmhouse Property.  Second, as previously

discussed, for bankruptcy purposes, the Debtor has interest in the Property equivalent to that of a BFP and

therefore would be able to avoid the Sale Agreement pursuant to his § 544 rights.  *See, e.g., McCannon v.*

*Marston*, 679 F.2d 13, 15 (3d Cir. 1982); *In re Pina*, 363 B.R. 314, 321 (Bankr. D. Mass. 2007).

> For these reasons, this Court finds that the Movant has failed to establish that the Debtor acted in
bad faith and the stay may not be modified on this basis.

## IV.     *Modification of The Automatic Stay for The Divorce Proceeding*

> The Movant has requested relief from the stay to pursue certain actions in and connected with the
Divorce Proceeding.  First, the Movant requests relief to allow her to proceed with the Contempt Petition.

Second, the Movant requests relief to proceed with the sale of the Property.  Third, the Movant requests

relief to pursue her rights against the Debtor in equitable distribution and otherwise continue the Divorce

Proceeding.  Relief from stay is not an all or nothing endeavor.  Cause must exist for each action for

which relief is sought.  As such, this Court must determine whether grounds exist for granting relief to the

Movant on each of her requests.

### A.     **Equitable Distribution**

> Domestic relations law is an area of law with particular importance to state interests.  *See, e.g.,*
*Solomon v. Solomon*, 516 F.2d 1018 (3d Cir. 1975) (recognizing the state's vital interest in the domestic

relations arena).  As such, bankruptcy courts routinely modify the automatic stay to permit the conclusion

of pending divorce proceedings to the extent necessary to administer the bankruptcy case.  *See, e.g., In re*

*Greene*, 1999 WL 138905, at *8 (Bankr. E.D. Pa. Mar. 5, 1999), *aff'd,* 1999 WL 689711 (E.D. Pa. Sept.

7, 1999); *In re Moses*, 194 B.R. 777, 779 (Bankr. E.D. Pa. 1996) (recognizing that cause exists to modify

stay to permit family court matters to proceed because of state court expertise); *In re Wilson*, 85 B.R. 722,

727 (Bankr. E.D. Pa. 1988) ("it was never Congressional intent to authorize bankruptcy courts to function

as a federal domestic relations court").  Moreover, until equitable distribution is accomplished, this Court

is unable to discern not only the interests of the Debtor in the Property but also his interest in other estate

assets.  *See, e.g., In re Leonard*, 231 B.R. 884, 889 (E.D. Pa. 1999) ("The courts have recognized that in

domestic matters it is often necessary to lift the automatic stay, so as to facilitate a quick resolution of

domestic issues and allow the debtor a fresh start.").  As a result, this Court will modify the automatic

stay to permit the Movant and the Debtor to proceed with the Divorce Proceedings to obtain an

adjudication of equitable distribution, as well as the awards of alimony, counsel fees and costs,

maintenance and support.

     **B.**       **The Sale of the Property to Trilogy**

     As to the conveyance of the Property to Trilogy, the Movant has not demonstrated that the

balance of hardships favor her.  If the sale to Trilogy is permitted to go forward, the sale will certainly

impact the property of the estate and the Debtor's economic status.  *See, e.g., In re Murray*, 31 B.R. 499

(Bankr. Pa. 1983) (lifting stay to permit state court to decide domestic relations issue while keeping the

stay in effect with regard to the disposition of the parties' property).  If the Debtor is correct that the

Property is worth more than the amount offered by Trilogy, the sale has the potential to adversely affect

the interests of his estate.  *See, e.g., Fox v. Hill*, 83 B.R. 290, 298 (Bankr. E.D. Pa. 1988) (recognizing the

"overriding Bankruptcy Code policy of protecting the property of debtors' estates").  Moreover, even if

the proposed sale would achieve the best price, the Debtor testified that he is prepared to obtain

alternative financing pursuant to a plan of reorganization that will enable an equivalent or better result for

the Movant.  Because the Movant will not be harmed if the proposed sale to Trilogy is stayed, this Court

finds that balance of hardships do not favor her.

     Support for this outcome is found in *In re Johnson*, 51 B.R. 439 (Bankr. E.D. Pa. 1985), one of

the cases cited by the Movant in her post-trial memorandum for the proposition that this Court should

modify the automatic stay to permit the parties to proceed with equitable distribution.  Despite the

Movant's reliance on this decision, this Court finds it to lend credence to the Debtor's arguments.  In

*Johnson*, the bankruptcy court refused to modify the stay to allow disposition of the parties' joint

property.  There, the debtor-husband filed a motion to sell entities property pursuant to § 363(h).  The

motion was opposed by the debtor's wife, a debtor in a separate case.  In denying the debtor-husband's

motion, the court found that the automatic stay applicable in the wife's separate bankruptcy proceeding applied to prevent the debtor-husband's proposed 363(h) sale.  The court wrote: "It is clear that a debtor's interest in property owned by him and his wife as tenants by the entireties is property of the estate, and this principle correlatively applies to the realty in question."  *In re Johnson*, 51 B.R. 439, 443 (Bankr. E.D. Pa. 1985).

What was not clear to the court was the extent of the debtor's interest in the property.  On this basis, the court modified the automatic stay to permit the parties to proceed with equitable distribution in the pending state court divorce proceeding.  "Until the instant debtor's interest in the property is determined, we will be unable to establish if he has met the elements of § 363(h)."  *In re Johnson*, 51 B.R. 439, 444 (Bankr. E.D. Pa. 1985).  Despite granting relief to pursue equitable distribution, the bankruptcy court kept the stay in place with regard to any disposition of the parties' property.

The same dynamic exists here.  The Debtor has indicated that he filed bankruptcy with the intent to conduct a sale of the Property.  Although the Debtor has not specifically identified the precise section of the Code that entitles him to this relief, he is in effect attempting to invoke his rights under § 363(h).  Pursuant to § 363(h), a debtor in possession has the right to sell the estate's interest together with the interest of a co-owner, including a spouse, provided the benefit to the estate exceeds the detriment to the non-debtor co-owner.  *See Schlossberg v. Barney*, 380 F.3d 174, 182 (4th Cir. 2004).  The Debtor's § 363(h) right arises under bankruptcy law and has no equivalent under state law.  As such, a federal bankruptcy court is the only venue in which these rights may be exercised.  *See, e.g., In re Sasson*, 424 F.3d 864, 871 (9th Cir.2005); *In re Funches*, 381 B.R. 471 (Bankr. E.D. Pa. 2008); *In re Pina*, 363 B.R. 314, 321 (Bankr. D. Mass. 2007).

As in *Johnson*, until the completion of equitable distribution in the Divorce Proceeding, this Court is unable to discern the extent of the Debtor's interest in the Property and whether such interest is sufficient to allow him to invoke his rights under § 363(h).  Accordingly, this Court will modify the automatic stay to permit equitable distribution to proceed.  However, as in *Johnson*, this Court will retain jurisdiction over the Property to ensure that the Property, to the extent it is determined the Debtor has an

interest in it, remains available to fund the Debtor's reorganization.  To do otherwise, this Court would

deprive the Debtor of his § 363(h) right.  For both reasons, this Court finds that cause does not exist to

modify the automatic stay to permit the sale of the Property.  Once equitable distribution is completed, the

parties may return to this forum to adjudicate the Debtor's § 363(h) rights.

        C.       **The Contempt Proceedings**

        The automatic stay has been held to apply to civil contempt proceedings brought against a debtor.

*See In re Leonard*, 231 B.R. 884, 889 (E.D. Pa. 1999); *In re Lincoln*, 264 B.R. 370, 372 (Bankr. E.D. Pa.

2001).  The contempt proceeding seeks to enforce the sale of the Property to Trilogy, this Court finds that

the stay applies to this proceeding in that it necessarily involves the disposition of an asset of the Debtor's

estate.  *See In re Lincoln*, 264 B.R. 370, 374 (Bankr. E.D. Pa. 2001) (refusing to lift stay to permit

continuance of contempt proceedings seeking to pursue collection of a debt).  Granting the Movant's

motion would have the effect of enabling her collect her debt against the Debtor and would prejudice the

creditors of his estate.  For the same reasons that this Court will not modify the stay to permit the

proposed sale to go forward, this Court will not modify the automatic stay to permit the contempt

proceeding to go forward.

**SUMMARY**

        The Motion is granted in part and denied in part.  The Movant is granted relief from the

automatic stay under 11 U.S.C. § 362(d)(1) to pursue all rights and claims she has against the Debtor in

equitable distribution and support in the Divorce Proceeding.  On the other hand, the Movant is denied

relief from the automatic stay under 11 U.S.C. § 362(d)(1) to proceed with the sale of the Property or the

Contempt Petition filed in the Divorce Proceeding.

        An order consistent with this Opinion will be entered.


Dated:  December 17, 2010

                                    _____
                                    MAGDELINE D. COLEMAN
                                    UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                    :    CHAPTER 7
    MICHAEL SCOTT CHANDLER, SR.      :

        DEBTOR.          :    BANKRUPTCY NO. 10-16089-MDC

# **O R D E R**

For the reasons stated in the accompanying Memorandum of Opinion issued by this Court, It is hereby **ORDERED** that:

1.     The Motion is **GRANTED IN PART** and **DENIED IN PART**.

2.     The movant, Delores Chandler ("Movant") is **GRANTED** relief from the automatic stay under 11 U.S.C. § 362(d)(1) to pursue all rights and claims she has against the Debtor in equitable distribution and support in the divorce proceeding pending in the Chester County Court of Common Pleas (the "Divorce Proceeding") captioned *Dolores R. Chandler v. Michael S. Chandler*, Civil Action No. 04-06895.

3.     The Movant is **DENIED** relief from the automatic stay under 11 U.S.C. § 362(d)(1) to proceed with the sale of the Property.

4.     The Movant is **DENIED** relief from the automatic stay under 11 U.S.C. § 362(d)(1) to proceed with the contempt petition filed in the Divorce Proceeding.

Dated:  December 17, 2010                _____
                                          MAGDELINE D. COLEMAN
                                          UNITED STATES BANKRUPTCY JUDGE